IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA, | § | |
|---|---|---|
| | § | |
| V. | § | |
| | § | No. 3:18-cr-635-N |
| BRANDON KEITH WRIGHT, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Defendant Brandon Keith Wright is charged, in an indictment filed in this district, with violations of 18 U.S.C. § 2251(a), Production of Child Pornography, and 18 U.S.C. § 2252A(a)(1), Transporting and Shipping Child Pornography. *See* Dkt. No. 3.

The government moved for his pretrial detention. *See* Dkt. No. 8. On January 22, 2019, Defendant waived a detention hearing but reserved his right to ask for a hearing if he is released from state custody while this case is pending, *see* Dkt. No. 16, and was ordered detained pending trial under 18 U.S.C. § 3142(f), *see* Dkt. No. 17.

Wright has now filed an Emergency Motion for Pretrial Release Due to Public Health and Safety Threat Posed by COVID-19 Pandemic, *see* Dkt. No. 32, which the Court referred to the undersigned United States magistrate judge under 28 U.S.C. § 636(b) for hearing, if necessary, and determination, *see* Dkt. No. 34. The government then filed a court-ordered response to the motion. *See* Dkt. No. 36.

### Background

In his motion, Wright "moves this Court for immediate release from pretrial

detention" and "requests that the Court grant the motion, or, alternatively, hold an emergency hearing on this motion and allow the parties to appear by phone." Dkt. No. 32 at 1. He asks that the Court order that he "be released on appropriate conditions prior to trial" and asserts that, "during this temporary release, Mr. Wright will not be left to his own devices, but will be supported and monitored by Pretrial Services." *Id.* at 11.

In support, Wright asserts that,

- "[a]s the novel coronavirus that causes COVID-19 has spread across the globe, hundreds of thousands of people have been infected and thousands of people have died," "[t]here is no known cure," and "[d]evelopment of a vaccine is likely at least 12 months away";
- "[t]he Lew Sterrett Justice Center has never confronted a global health pandemic like this one," and "[t]e facility is unequipped either to prevent transmission of COVID-19 among detainees and staff or to isolate and treat individuals who become infected";
- "Wright's ongoing pretrial detention poses an imminent threat to Mr. Wright's life and to the health and safety of the community from a deadly infectious disease"; and,
- "[u]nder these unique circumstances, the Court must release Mr. Wright on appropriate conditions, at least until the resolution of this outbreak."

*Id.* at 1-2 (quotations modified and footnotes omitted).

Wright also contends that,

- "[a]t no point since Mr. Wright's arrest has a judicial officer concluded that Mr. Wright's pretrial detention is necessary to serve the government's compelling interests in preventing flight or reasonably assuring public safety, as the federal Constitution requires";

- "Wright suffers from Chron's disease, an inflammatory bowel disease (IBD)," which "causes inflammation of your digestive tract, which can lead to abdominal pain, severe diarrhea, fatigue, weight loss and malnutrition";

- "[c]ertain Crohn's disease drugs act by blocking functions of the immune system," and, "[s]ince his incarceration, Mr. Wright has been prescribed such medications, specifically Humira";

- "[a]ccording to the Centers for Disease Control and Prevention, those who are immunocompromised are at high risk for serious illness from COVID-19," and "[m]any conditions can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications"; and

- "Wright requires medication that puts him at a high-risk of developing serious illness from COVID-19, and is being held in a facility that cannot adequately protect Mr. Wright, or any other inmate, from contact with COVID-19."

*Id.* at 2-8 (footnotes omitted).

According to Wright, if released, he "would be under house arrest, and would follow all appropriate conditions imposed by the Court," which "would likely include, but not be limited to no contact of any type with anyone considered to be a protected person." *Id.* at 8.

As legal argument, Wright contends that "COVID-19 is causing an unprecedented public health crisis that underscores the constitutional requirement that pretrial detention be a last resort" and that his "ongoing [pretrial] detention is both dangerous and unconstitutional" where

- (1) "[t]he situation our society faces today, in which Mr. Wright continues to be detained in the face of a public health crisis, exacerbates the already devastating consequences of Mr. Wright's unconstitutional pretrial incarceration," because "there has been no finding that Mr. Wright's ongoing detention is necessary to serve any compelling government interest," and, "[e]ven if there had been, that decision must be revisited because of changed circumstances: the government's interest in ongoing incarceration cannot be justified where incarceration itself exacerbates an ongoing and devastating public health crisis and brings a heightened risk of illness and death to people inside and outside the jail";
- (2) "[t]he Due Process Clause imposes obligations on the government to meet the basic needs of the people it jails, who rely on the government for food,

clothing, and necessary medical care," and "[c]ontinuing to detain Mr. Wright if alternatives exist to protect the community and prevent flight while placing Mr. Wright in mortal danger of contracting and spreading an infectious disease constitute deliberate indifference to Mr. Wright's health and safety," such that "Wright's incarceration, under these new circumstances, constitutes an independent due process violation that the Court must remedy";

- "[c]onditions of release are available that allow [Wright] to be treated humanely while also ameliorating any danger to the community," where, from "Wright's perspective his life – not only his liberty – is on the line, creating a powerful incentive to abide by any release conditions the Court may impose and changing the calculus that initially led to the denial of bail in this case."

*Id.* at 8-11 (quotations modified).

The government responds that,

- although "Wright does not cite to any statute, the government assumes that the defendant is moving to be released on bail pending trial pursuant to 18 U.S.C. § 3145(b) based not on any facts or law, but rather on the speculative prospect of a COVID-19 outbreak at the facility where he is being detained";

- "[c]ourts have commonly rejected such arguments because the general prospect of infection by the novel coronavirus does not supersede the

- statutory considerations of 18 U.S.C. § 3142";

- Wright "has not demonstrated that the detention facility's staff and medical personnel are unprepared to address any such cases" and

- "the motion ignores the egregious criminal behavior that required his detention in the first place, that being sexually exploiting a three-year-old."

Dkt. No. 36 at 1.

### Legal Standards and Analysis

"The provisions of 18 U.S.C. §§ 3142 and 3144 govern pretrial release." FED. R. CRIM. P. 46(a).

Wright was eligible for pretrial detention under 18 U.S.C. § 3142(f)(1) because he is charged by indictment with two felony offenses under Chapter 110, which are defined for purposes of Section 3142(f)(1) as "crimes of violence." *See* 18 U.S.C. § 3156(a)(4)(C). Under the Bail Reform Act, "[i]f, after a hearing pursuant to the provisions of [18 U.S.C. § 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). And, because a grand jury indicted Wright for offenses under 18 U.S.C. §§ 2251(a) and 2252A(a)(1) involving a minor victim, the Bail Reform Act provides that, "[s]ubject to rebuttal by [Wright], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the

safety of the community," 18 U.S.C. § 3142(e)(3); *accord* Dkt. No. 8 at 2. Where, as here, the presumption applies, although the burden of persuasion remains always with the government, Defendant must produce sufficient evidence to rebut the presumption. *See United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989).

The Court may reopen a detention hearing, "before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). And, "[i]f a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). And the Court "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i); *see also United States v. Parker*, 848 F.2d 61, 63 (5th Cir. 1988) (explaining that "a judicial officer may subsequently order the temporary release of the detainee 'to the extent that the judicial officer determines such release to be

necessary for preparation of the person's defense.'" (quoting 18 U.S.C. § 3142(i))).

Wright knowingly and voluntarily waived a detention hearing after consultation with his attorney (who also filed this motion), subject to reserving his right to ask for a hearing if he is released from state custody while this case is pending. *See* Dkt. No. 16. Wright does not claim that he has been released from state custody, *see generally* Dkt. No. 32, and the government reports that "[a] Navarro County grand jury indicted Wright on two counts of indecency with a child that remain pending," Dkt. No. 36 at 5 n.1.

Neither does Wright ask to reopen and hold a new detention hearing under Section 3142(f) to present new and material evidence bearing on the issue whether there are conditions of release that will reasonably assure his appearance at trial or the safety of any other person or the community if he were released.

And – contrary to the government's interpretation of the legal basis for Wright's motion but consistent with the government's observation that his "motion, which focuses primarily on the potential of a COVID-19 outbreak in his facility, largely ignores the factors that this Court must consider in determining whether a defendant should be detained pending trial," Dkt. No. 36 at 7 – the Court does not read his motion as asking the Court to revoke the original detention order under Section 3145(b). *See generally United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) ("When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an

independent determination of the proper pretrial detention or conditions for release.").

Rather, the Court understands Wright to be seeking "temporary release" under Section 3142(i) "on appropriate conditions, at least until the resolution of this outbreak," based on what he asserts are compelling reasons based on "new" and "changed circumstances" presented by the COVID-19 pandemic and his pretrial detention in the Dallas County jail. Dkt. No. 32 at 2, 8, 10, 11.

In support of his request for temporary release, Wright contends that his pretrial detention is unconstitutional under *United States v. Salerno*, 481 U.S. 739 (1987), and the Fifth Amendment's Due Process Clause. But, while "[t]he Due Process Clause of the Fifth Amendment forbids pretrial detention that is punitive, rather than regulatory, in nature," "[t]he Supreme Court has generally upheld the constitutionality of the Bail Reform Act, under which the [Court] here has ordered [Wright's] pretrial detention, as serving regulatory and not punitive ends," *United States v. Stanford*, 394 F. App'x 72, 74 (5th Cir. 2010). And the Court did not hold a hearing when ordering Wright's pretrial detention under Section 3142 because Wright knowingly and voluntarily waived a hearing. *See* Dkt. Nos. 16 & 17.

Under Section 3142(i), courts have held that a defendant "bear[s] the burden to show that his release is 'necessary for preparation of the person's defense'" or for another compelling reason. *United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013). In the context of arguments for released

based on the COVID-19 pandemic, another court has explained that

> [t]here is limited authority as to when temporary release is justified under § 3142(i) based on "another compelling reason," although a defendant's medical condition may present that compelling reason in a particular case. *See United States v. Rebollo-Andino*, 312 Fed. App'x 346, 348 (1st Cir. 2009) (noting the defendant could seek temporary release under § 3142(i) for medical reasons). Courts have typically granted relief under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020). ....
>
> A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community. The risk of harm to the defendant does not usually bear on this analysis. Rather, whether a defendant's particular circumstances warrant release in light of the COVID-19 pandemic ought to more properly considered on a case-by-case basis under the "another compelling reason" prong of § 3142(i), as the district court did in *Hamilton*, 2020 WL 1323036, at *2.

*United States v. Clark*, Case No. 19-40068-01-HLT, 2020 WL 1446895, at *2-*3 (D. Kan. Mar. 25, 2020).

Wright argues that his "ongoing pretrial detention poses an imminent threat ... to the health and safety of the community from a deadly infectious disease"; that, if released, he "would be able to effectively protect himself from COVID-19"; and that, because "[r]educing the size of the population in jails and prisons is crucially important to reducing the level of risk both for those within those facilities and for the community at large," "[i]n this unique moment, release enhances the safety of other people and the community – and is necessary to protect Mr. Wright's own

health and safety." Dkt. No. 32 at 8 (citation, internal quotation marks, and emphasis omitted). Wright asserts that he "must be able to exercise self-protective measures in a sanitary, disinfected space, and to maintain social distance from other community members to flatten the curve of the virus's spread" and that, when he "was initially detained, circumstances were different; this Court must consider the stark change in circumstances." *Id.*

But Wright's argument that his release is necessary to protect the safety of the community is unpersuasive in the context of Section 3142, because the "assertion that there is a public good in the release of as many prisoners as possible to avoid spread of the pandemic, as [Wright essentially] argues ..., would be an argument for releasing all detainees." *United States v. Munguia*, No. 3:19-cr-191-B (03), 2020 WL 1471741, at *4 (N.D. Tex. March 26, 2020) (internal quotation marks and citation omitted). "[A]nd, as other courts have also concluded, the court cannot not release every detainee who may be at risk of contracting COVID-19, as it would then be required to release *all* detainees." *United States v. Kerr*, No. No. 3:19-cr-296-L, 2020 WL 1529180, at *3 (N.D. Tex. Mar. 31, 2020) (citation omitted).

Wright also asserts that he has an underlying health condition that makes him more susceptible to contracting COVID-19 than other detainees as part of an outbreak. But the Court concludes that this is not sufficient, without more, to meet his burden under Section 3142(i). Wright notes that, "[a]s of March 27, 2020, at least seven Dallas County inmates have been diagnosed with COVID-19" and that

"[t]he first inmate to test positive for the virus had been in the same place as Defendant is housed in the Dallas County Jail since December, meaning the virus came into the jail through another person." Dkt. No. 32 at 3 (footnote omitted). But he otherwise only points to aspects of any prison or jail setting to assert that his detention "facility is unequipped either to prevent transmission of COVID-19 among detainees and staff or to isolate and treat individuals who become infected." *Id.* at 1; *see id.* at 3-7.

> As another judge in this district recently held in this context,
>
> COVID-19, as coronavirus disease 2019 is known, is an infectious disease caused by a new virus, which causes respiratory illness and has resulted in thousands of deaths around the world, with more than 8,900 in the United States alone. According to the Center for Disease Control (CDC), persons with underlying medical conditions such as diabetes and obesity are at a higher risk of developing serious COVID-19 illness. The CDC has acknowledged the particular challenges faced by correctional and detention facilities in controlling the transmission of COVID-19 and has provided some guidance, as several courts have recognized.

*United States v. Morris*, No. 3:19-cr-573-B, Dkt. No. 31 at 8-9 (N.D. Tex. Apr. 6, 2020) (citations omitted). Wright's health and the public health emergency caused by COVID-19 are extremely important considerations, and the Court does not take them lightly.

But Wright "has not shown that the Dallas County jail is unable to or failing to take measures to protect inmates from the spread of COVID-19." *Id.* at 9. "The United States Marshal's Office for the Northern District of Texas has confirmed that all of the facilities in which it houses federal detainees are implementing

practices to protect detainees in accordance with CDC guidelines." *Id.* at 9-10; *see also* Dkt. No. 36 at 11 ("As for local pretrial detention facilities the Marshals Service contracts with, each has their own internal procedures as to how they are dealing with the COVID-19 virus and are following CDC guidelines to the best of their ability. Each facility has updated their intake procedures, which includes screening each new inmate for the COVID-19 symptoms, and will deny entry into their facility if an inmate demonstrates any symptoms." (footnote omitted)). And Wright "does not allege that he has actually been exposed to the virus, or that anyone he is in contact with has been exposed." *Morris*, No. 3:19-cr-573-B, Dkt. No. 31 at 10.

## Conclusion

The Court concludes that Wright has failed to meet his burden under 18 U.S.C. § 3142(i) to show that his temporary release from detention is necessary for a compelling reason and DENIES the Emergency Motion for Pretrial Release Due to Public Health and Safety Threat Posed by COVID-19 Pandemic [Dkt. No. 32].

SO ORDERED.

DATED: April 7, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE